IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**STANLEY H.R. EWAN, et al.,**

    **Plaintiffs,**

    v.                                                                 **CASE NO. 23-3234-JWL**

**UNITED STATES OF AMERICA,**
**et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiffs Stanley H.R. Ewan, Jeffrey G. Barnes, Jr., Robert E. Miller, Norman Stout, and Michael S. Ingram are hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiffs' Amended Complaint that are discussed herein. Plaintiffs are also given the opportunity to file a proper second amended complaint to cure the deficiencies.

**I. Nature of the Matter before the Court**

The Court screened Plaintiffs' Complaint and entered a Memorandum and Order to Show Cause (Doc. 8) ("MOSC"), granting Plaintiffs an opportunity to show good cause why their Complaint should not be dismissed or to file an amended complaint to cure the deficiencies. This matter is before the Court for screening Plaintiffs' Amended Complaint (Doc. 9). The Court's screening standards are set forth in the MOSC.

Plaintiffs bring this pro se civil rights action under 28 U.S.C. § 1331 and 28 U.S.C. § 2201. At the time of filing, all of the eight original Plaintiffs were incarcerated at the U.S. Disciplinary

Barracks in Fort Leavenworth, Kansas ("USDB").[1]  The Amended Complaint only includes five of the original Plaintiffs, and they bring claims regarding the rejection of publications, grooming standards, and the denial of abatement days for all USDB inmates completing certain treatment groups at the USDB.  (Doc. 9, at 4.)   Plaintiffs allege that they have been deprived of their rights under the First, Fifth, and Fourteenth Amendments.  *Id*.

**1.  Rejected Publications – First Amendment**

Plaintiffs allege that for all of the books at issue, the USDB initially denied the books, the inmates appealed the denial to the Publication Advisory Board ("PAB"), and the Commandant signed off on the denials.  Plaintiffs allege that the reason for the denials was changed from obscenity to "a general statement on safety, security, and good orderly running of facilities."  *Id*. at 5.  The relevant books denied for each plaintiff are as follows:

> Jeffery G. Barnes, Jr.:  all nine books by Jan Stryvant[2]
> Stanley H.R. Ewan:  *50 Shades Darker* by E.L. James, and *Penthouse Letters: Threesomes, Foursomes, and Moresomes*
> Robert E. Miller:  *When It Falls* by Jan Stryvant
> Norman R. Stout:  *Secret Treaties* by Jan Stryvant

*Id*.

The Amended Complaint provides that Plaintiff Michael S. Ingram ordered "*Perfect Strangers*" by Jan Stryvant, and Plaintiff Stanley H.R. Ewan ordered "*It Ain't Easy*" by Jan Stryvant, "which passed through the mail room and were delivered to each of us." *Id*.  They allege

---

[1] Plaintiffs filed a motion seeking to prohibit the transfer of any of the Plaintiffs to a different facility, alleging that the transfer of any of the Plaintiffs potentially disrupts this case.  (Doc. 2.)  In denying the motion in the MOSC, the Court noted that the motion demonstrates one of the problems with having multiple incarcerated plaintiffs in one action. (Doc. 8, at 9.)  Only four of the original Plaintiffs signed the motion.  *Id*.  The Court has not received a change of address for any of the remaining five Plaintiffs, so it is unclear if they all remain housed at the USDB.

[2]  The nine books by Jan Stryvant that are issue in this case are:  *Perfect Strangers*; *Over Our Heads*; *Head Down*; *When It Falls*; *Stand On It*; *Vegas Rules*; *Desperate Measures*; *Secret Treaties*; and *It Ain't Easy*.  (Doc. 9, at 5.)

2

that because the two publications were previously denied, they "are continuously at risk of being charged with unauthorized pornography or prohibited property, due to the present application of MCC Regulation 28–1." *Id*. at 5–6.  Plaintiffs argue that the USDB implemented a policy in July 2021 banning all nude photographs, and the updated policy "in combination with the current application of MCC 28–1, regarding written materials, effectively bans all forms of sexual expression to or from inmates." *Id*. at 5.

### 2. Grooming Standards – First Amendment

The Amended Complaint alleges that Plaintiff Ewan requested an exception to policy ("ETP") in May 2023, seeking "to waive the stringent grooming standards to provide for freedom of expression." *Id*. at 6.  Ewan's ETP was denied. *Id*.

### 3. Property Claim – Fifth Amendment

Plaintiffs allege that "[i]mmediately upon being notified that an item has been denied, the mail room staff provides only the option to ship the item or destroy it." *Id*.  "Jeffrey G. Barnes elected to ship the books to the court as evidence . . . [and] that option was denied to him by the destruction of that property." *Id*.  Plaintiffs note that they have discovered that the court will not accept traditional exhibits without first obtaining permission, and argue that the policy, as it is being enforced, denies the court access to the denied material. *Id*.  The Amended Complaint provides that the time period to ship the books is not clearly defined in MCC 28–1 and is unreasonable, and [t]he automatic destruction of the books without a defined period of time, to be considered 'abandoned,' deprives Inmate Barns of his personal property without appropriate compensation." *Id*.

### 4. Abatement Days – Fourteenth Amendment

Plaintiffs allege in the Amended Complaint that the USDB has implemented a new policy

3

on abatement days awarded for the completion of approved programs, and is only applying the policy to newly-arrived inmates. *Id*. at 6–7. Current inmates who have already completed the same groups, which includes all of the Plaintiffs, are not eligible for the new abatement days. *Id*. at 7. Plaintiff Ewan filed a request with the facility to reconsider the position because "it is unfair to those inmates who have already completed treatment groups." *Id*. Ewan's request was denied. Plaintiffs allege that new arrivals are being treated more favorably than older inmates, like Plaintiff Ewan. *Id*. This results in Ewan being in confinement for 7–21 days longer than newly-arrived inmates who complete the same courses. *Id*. Plaintiff Ewan sought clemency from the U.S. Air Force Clemency and Parole Board for those days and his request was denied. *Id*. at 8.

### 5. Defendants and Requested Relief

Plaintiffs name the United States of America and Kevin M. Payne, Commandant, as defendants. Plaintiffs seek relief in the form of declaratory judgments. *Id*. at 8–9.

## II. DISCUSSION

### 1. Declaratory Judgment Act

Plaintiffs state that they are not bringing this action under 42 U.S.C. § 1983 or *Bivens*. *Id*. at 1. They claim that they are bringing this action under the Declaratory Judgment Act, 28 U.S.C. § 2201. *Id*. However, "the Declaratory Judgment Act does not provide an independent federal cause of action." *Nero v. Oklahoma*, 2022 WL 14423872, at *2 (10th Cir. 2022) (unpublished) (citation omitted). "It merely empowers a court '[i]n a case of actual controversy within its jurisdiction' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Id*. (citing § 2201(a)). "In other words, the Act 'enlarge[s] the range of remedies available in the federal courts,' . . . but it leaves 'substantive rights unchanged,' . . .." *Id*. (internal citations omitted).

4

Therefore, to maintain an action for declaratory judgment, a plaintiff "must assert a federal cause of action—one that exists independent of any request for declaratory relief." *Id*. (noting that the plaintiff invoked § 2201 only and expressly disavowed an intent to rely on § 1983); *see also Brown v. Schnurr*, 2022 WL 3646248, at n.29 (D. Kan. Aug. 24, 2022) (noting that 28 U.S.C. § 2201–2202 did not provide plaintiff with a federal cause of action); *Dudley v. Butler Cty. Dist. Ct.*, 2021 WL 1377112, at *1 (D. Kan. April 12, 2021) (finding that the Act is not an independent basis for federal subject matter jurisdiction and stating that "[b]efore invoking the Declaratory Judgment Act, a federal court must 'have jurisdiction already' under some other federal statute") (citations omitted).

Plaintiffs also assert jurisdiction under § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Although this Court has jurisdiction under § 1331 over actions "arising under the Constitution," a "plaintiff must also show the existence of a remedy by stating a claim for relief or a 'cause of action' in federal court." *Camp v. Richardson*, 2014 WL 958741, at *2 (D. Kan. March 11, 2014).

Plaintiffs should clarify what federal cause of action they are asserting. This Court has held that judicial review of agency action is available under the Administrative Procedures Act, 5 U.S.C. §§ 551 and 702. *Hays v. Commandant, U.S. Disc. Barracks*, 2005 WL 2016903, at *3 (D. Kan. 2005) (noting that the parties agreed that plaintiff exhausted administrative remedies). However, a "court must decline to adjudicate a nonjusticiable claim even if the defendant does not move to dismiss it under Fed. R. Civ. P. 12(b)(6)." *Nauman v. Wormuth*, 2024 WL 776100, at *4 (D. Kan. Feb. 26, 2024) (citation omitted) (addressing justiciability in action seeking declaratory and injunctive relief under 5 U.S.C. § 702).

The Court in *Nauman* found that justiciability depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Id*. at *6 (citing *Baker v. Carr*, 369 U.S. 186, 198 (1962)). The Court stated that:

> "Traditionally the courts have been reluctant to intervene in or review military affairs, particularly those dealing with military discretion." *Lindenau v. Alexander*, 663 F.2d 68, 70 (10th Cir. 1981). The Supreme Court has explained the roots of this reluctance this way: the "complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civil control of the Legislative and Executive Branches." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) (emphasis omitted). There " 'are thousands of routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or jurisdiction of courts to wrestle with.' " *DeRito v. United States*, 851 F. App'x 860, 861 (10th Cir. 2021) (quoting *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993)). So, while "actions against military officials for violating their own regulations are reviewable or justiciable," *Lindenau*, 663 F.2d at 71, personnel matters and other "[d]iscretionary decisions of the military are not subject to review by civilian courts," *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir. 1976) (per curiam).
>
> Our Circuit prescribes a two-part test to determine whether a military plaintiff's claim is justiciable. *DeRito*, 851 F. App'x at 861–62. *First*, the court asks "whether the case involves an alleged violation of a constitutional right, applicable statute, or regulation, and whether intra-service remedies have been exhausted." *Lindenau*, 663 F.2d at 71 (quotation cleaned up). *Second*, the court "evaluat[es] the scope and nature of the intervention into otherwise military affairs necessary to vindicate the alleged violation[.]" *DeRito*, 851 F. App'x at 861–62. This second step requires the court "to weigh the nature and strength of the challenges to the military determination, the potential injury to the plaintiff if review is refused, the type and degree of anticipated interference with the military function, and the extent to which military discretion or expertise is involved in the challenged decision." *Lindenau*, 663 F.2d at 71 (quotation cleaned up). This second part of the test "essentially balances the interest of the parties, with a preference against interference in the military." *Costner v. Okla. Army Nat'l Guard*, 833 F.2d 905, 907 (10th Cir. 1987).

*Nauman*, 2024 WL 776100, at *6.

The Court in *Nauman* noted that "[t]he parties agree that plaintiff has met step one of the *Lindenau* test by alleging a constitutional violation and exhausting his intra-service remedies." *Id*. at *7 (citing *Lindenau*, 663 F.2d at 71). In *Nauman*, the plaintiff had submitted two Article 138 complaints. *Id*. at *3–4. The Court will now address exhaustion as it pertains to the instant case.

**2. Exhaustion**

Even if Plaintiffs assert a federal cause of action, they must show that their claims were exhausted. In the Amended Complaint, they assert that they utilized the process for an MCC 510 and appealed the denial of their publications to the PAB, and that "[t]o our knowledge there are no other administrative remedies with regard to the books or grooming standards." (Doc. 9, at 5, 8.) They note that with regard to the abatement issue, Plaintiff Stanley H.R. Ewan requested clemency from the U.S. Air Force Clemency and Parole Board for the relevant days and the request was denied. *Id*. at 8.

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring an action with respect to prison conditions under federal law "until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). That exhaustion requirement is mandatory, meaning "a court may not excuse a failure to exhaust, even to take [special] circumstances into account;" judicial discretion is foreclosed. *See Ross v. Blake*, 578 U.S. 632, 638-39 (2016) (citations omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a [federal] claim under the PLRA for failure to exhaust his administrative remedies." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (quoting *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir.2002)). "To exhaust administrative

remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Id*. (citing *see Jernigan*, 304 F.3d at 1032).

Plaintiffs have not disputed that they are subject to the PLRA, and they cite to it in their Amended Complaint. *See* Doc. 9, at 2 (arguing that joining their claims together "further serves the PLRA by reducing the number of cases to be screened"). The PLRA's exhaustion requirement applies on its face to military prisoners like Plaintiffs. *Long v. Johnston*, 2022 WL 17177348, at *2 (D. Kan. Nov. 23, 2022) (citing *see* 42 U.S.C. § 1997e(a); *see also Murphy v. Hylton*, 2007 WL 1201517, at *3 (D. Kan. Apr. 23, 2007) (military prisoner must exhaust under Section 1997e(a) regarding conditions at the USDB); *Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1262-65 (D. Kan. 1999) (applying PLRA's exhaustion requirement in suit by military prisoner)).

Regarding exhaustion, this Court held in *Long*, that:

> Article 138 of the Uniform Code of Military Justice provides a procedure for military prisoners to assert grievances. *See* 10 U.S.C. § 938. Specific procedures and requirements for asserting a grievance under Article 138 are mandated by Army regulation. The military requires compliance with Article 138 for the exhaustion of administrative remedies. *See United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (citing *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)); *see also Woodrick v. Hungerford*, 800 F.2d 1413 (5th Cir. 1986) (in habeas action, military prisoner failed to exhaust administrative remedies because he did not first assert a grievance under Article 138); *Levy v. Dillon*, 286 F. Supp. 593, 595-97 (D. Kan. 1968) (same).
>
> Thus, plaintiff was required to seek relief for these grievances by filing a written complaint under Article 138 before filing this action.

*Long*, 2022 WL 17177348, at *2. Thus, a plaintiff is required to seek relief for grievances by filing a written complaint under Article 138[3] before filing an action for violations of constitutional rights

---

[3] Article 138 provides that:
    Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer,

with respect to prison conditions. *Id.*; *see also Guinn*, 81 M.J. at 203 (exhaustion required the use of *both* the applicable prison grievance system and an Article 138 complaint). Plaintiffs should show good cause why their claims should not be dismissed for failure to exhaust administrative remedies.

### 3. Grooming Policy

Plaintiff Ewan alleges that his request seeking "to waive the stringent grooming standards to provide for freedom of expression" was denied. (Doc. 9, at 6.) The Amended Complaint fails to provide any details regarding the grooming standards[4] or the exception Ewan was seeking. Plaintiff Ewan does not allege that the grooming policy impacted his right to freely practice his religion. *See Mitchell v. Annucci*, 2019 WL 3253192, at *7 (N.D.N.Y. 2019) (claim that prison policy prohibiting designer corn rows violated prisoner's right to free expression was dismissed for failure to state a claim where prisoner failed to plead any facts suggesting he sought to maintain his long hair in braids as part of his religious expression or beliefs) (citing *see Betts v. McCaughtry*, 827 F. Supp. 1400, 1408 (W.D. Wis. 1993), *aff'd*, 19 F.3d 21 (7th Cir. 1994) (reasoning that the plaintiffs failed to articulate what message, if any, was intended by wearing sunglasses or caps indoors or explained [sic] that the wearing of long fingernails expresses a specific belief) (collecting cases); *see also Smith v. Bennett*, No. CV04-594, 2005 WL 1660824, at *2 (D. Idaho

---

is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

10 U.S.C. § 938.

[4] In the original Complaint, Plaintiffs state that "[t]he USDB requires that inmates shave every day, and that they get a hair cut every two weeks." (Doc. 1, at 6.)

July 12, 2005) ("The Court is unaware of any legal support for Plaintiff's claim that an inmate has a constitutional right to express himself through hair length.")).

The Amended Complaint fails to provide any details regarding the grooming standards, what exception Ewan was seeking, or how the standards violated his freedom of expression. *See Mitchell v. New York State Dep't of Corr.*, 2012 WL 6204205, at *11 (W.D.N.Y. 2012) (finding that where prisoner did not appear to have suffered any actual injury due to the application of the grooming policy, he lacked standing to challenge it); *see also New Rider v. Bd. of Ed. Of Indep. Sch. Dist. No. 1, Pawnee Cty., Okla.*, 480 F.2d 693, 699 (10th Cir. 1973), *cert. den.* 414 U.S. 1097 (1973) (noting that the Supreme Court rejected the contention that ". . . an apparently limitless variety of conduct [or appearance] can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea") (citing *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

A pro se litigants "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Plaintiff Ewan must show good cause why his claim regarding the grooming policy should not be dismissed for failure to state a claim. *See Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 864 (5th Cir. 2004) (finding that "to succeed, Freeman must do more than point to the existence of a generic First Amendment right . . . [h]e must also establish that he exercised that right in a *manner* consistent with his status as a prisoner").

### 4. Property Claims

Plaintiff Barnes argues that the destruction of his rejected books deprived him of his personal property without appropriate compensation in violation of the Fifth Amendment.[5] If Plaintiff Barnes is raising a claim under the Takings Clause of the Fifth Amendment, he fails to state a claim. "The Takings Clause of the Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'" *Hines v. Ferguson*, 2019 WL 3504239, at \*3 (E.D. Pa. 2019) (citing *Nat'l Amusements Inc. v. Borough of Palmyra,* 716 F.3d 57, 63 (3d Cir. 2013) (quoting U.S. Const. amend. V) (alteration in original)).

Nothing in the Amended Complaint suggests that the books were taken for a public purpose. *See id.* (where inmates alleged that property was destroyed, lost, or left in disarray after their transfer to a different facility, court found that "[n]othing in the Complaint suggests that Hine's property was taken for a public purpose"). Accordingly, the Takings Clause is not implicated. *Id*. (citations omitted). Plaintiff Barnes should show good cause why his Fifth Amendment claim should not be dismissed for failure to state a claim.

### 5. Abatement Policy

Plaintiffs allege that they are being denied abatement days for completion of treatment groups, while newly-arrived inmates are receiving the credits. Plaintiffs allege that this violates their rights under the Fourteenth Amendment. As this case involves federal defendants, "the applicable equality guarantee is not the Fourteenth Amendment's explicit Equal Protection Clause, it is the guarantee implicit in the Fifth Amendment's Due Process Clause." *Sessions v. Morales-Santana*, 582 U.S. 47, 52 n.1 (2017) (citing *see Weinberger v. Wiesenfeld,* 420 U.S. 636, 638, n.2,

---

[5] The Court notes that although Plaintiffs assert in the Amended Complaint that the books were automatically destroyed, in the original Complaint Barnes asserts that when he was notified that he could go to the mailroom to catalog the books but would not be permitted to look through the books, "Plaintiff decided to stay the course with the grievance and to reorder the books if necessary for this complaint." (Doc. 1, at 3.)

11

(1975) ("[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process. This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." (citations and internal quotation marks omitted; alteration in original))).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). "An equal protection claim may challenge legislation or the conduct of an individual." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (citation omitted). The claim "may be asserted with respect to a group or a 'class of one.'" *Id*. (citation omitted). "The former is more common and concerns a 'governmental classification[ ] that affect[s] some groups of citizens differently than others.'" *Id*. (citations omitted).

Plaintiffs allege that current prisoners who have completed the programs are being treated differently than newly-arriving inmates who would be starting the programs after the new policy took effect. A plaintiff "who alleges [such] an equal protection violation has the burden of providing the existence of purposeful discrimination" casing an adverse effect. *Id*. (citations omitted).

"Once a plaintiff shows discriminatory intent and an adverse effect, a court reviews the government action under the appropriate level of scrutiny." *Id*. (citation omitted). In this case, Plaintiffs have not alleged that they are members of a suspect class or that their claims involve a fundamental right. As prisoners, Plaintiffs are not members of a suspect class. *See Durham v.*

*Lappin*, 346 F. App'x 330, 333 (10th Cir. 2009) (unpublished) ("Prisoners are not suspect classes.") (citation omitted); *see also Tootle v. Uitenham*, 103 F. App'x 337, 338 (10th Cir. 2004) (unpublished) (rejecting argument that application of the *Feres* doctrine to military prisoners creates a "suspect class of prisoners").

Nor have Plaintiffs shown that eligibility to receive abatement days for the completion of programs involves a fundamental right. *See Linton v. O'Brien*, 142 F. Supp. 3d 215, 219 (D. Mass. 2015) ("Inmates in the DDU are not a suspect class and access to good time credit programs is not a fundamental right."); *Abdul-Akbar v. Dep't of Corr.*, 910 F. Supp. 986, 1004 (D. Del. 1995) ("Prisoners are not a suspect class . . . [and] have no fundamental right to participate in rehabilitation programs . . . or to earn good-time credits."); *Pickett v. LeClaire*, 2009 WL 3320676, at *3 and n.1 (S.D. N.Y. 2009) (stating that prisoner "does not claim to belong to a suspect class or point to a fundamental right burdened by the decision to withhold good time credits" and noting that the case is distinguishable from situations where the prison revoked good time credits that were previously earned); *Tillman v. Woodall*, 2013 WL 4049977, at *5 (M.D. Tenn. 2013) ("The plaintiff's claims about participation in various prison programs do not implicate a fundamental right, because the plaintiff does not have a constitutional right to participate in prison programs and activities, or to sentence-reduction credits.") (citation omitted).

Because Plaintiffs have not alleged that their claim involves a suspect class or a fundamental right, rational-basis scrutiny would apply and the challenged policy need only bear a rational relationship to legitimate government ends. *See Holt v. Patty*, 2017 WL 4338315, at 86 (D. Kan. 2017) ("Because neither prisoners nor indigents constitute a suspect class, the challenged policy need only bear a rational relationship to legitimate government ends.") (citation omitted).

"In *Turner,* the Supreme Court adopted a lower standard of scrutiny in evaluating the constitutionality of prison rules and regulations, in order to balance prisoners' constitutional rights with the deference due officials delegated the responsibility of administering prisons." *Patel v. Wooten*, 15 F. App'x 647, 650 (10th Cir. 2001) (unpublished) (citing *Turner v. Safley,* 482 U.S. 78, 84–85 (1987)).  The Court decided that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* (citing *Turner*, 482 U.S. at 89).  The four factors relevant to determining the validity of a prison regulation that infringes a prisoner's constitutional right are:

> (1) whether a valid and rational connection exists between the regulation and a legitimate governmental interest advanced as a justification; (2) whether, notwithstanding the regulation, alternative means exist for the prisoner to exercise the right; (3) what effect an accommodation of the prisoner's constitutional right would have on guards, inmates and prison resources; and (4) whether an alternative is available which would accommodate the prisoner's rights at a de minimis cost to valid penological interests.

*Id.* at 650–51 (citing *Turner*, 482 U.S. at 89–91).

The Amended Complaint provides that "[u]niform application of the new policy would be fair and equitable and require very little effort by the USDB."  (Doc. 9, at 7.)  An assertion that a policy is without a rational basis is insufficient to overcome the presumption of rationality.  *See Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007) ("Plaintiffs' conclusory allegations that the classification lacks a rational basis and was created with malicious intent are insufficient to overcome the presumption of government rationality in this case.") (citations omitted).

In *Alexander v. Madden*, the prisoner argued that the failure to apply the amendments to the Good Conduct Credit provisions retroactively violated his equal protection rights.  *Alexander v. Madden*, 2018 WL 3126092, at *4 (S.D. Cal. 2018).  The court found that it was not irrational

for the department of corrections to choose against applying its new policy retroactively, as the department explained:

> A number of reasons support the department's determination that new and revised credit earning programs should be implemented prospectively. First, implementation of all the new and revised credit earning programs will likely affect the credit calculations of more than 80,000 inmates. To do so prospectively represents a major task for almost all of the divisions and branches of the department, but especially for the staff responsible for updating information technology systems, auditing release date calculations, and developing credit earning programs. To apply the credits retroactively would require significantly more time, staff, and resources.

*Id.* (citation omitted).

Plaintiff Ewan appears to be the only Plaintiff that challenged the new policy, and the Amended Complaint does not set forth any explanation given for the rejection of his request for the facility to reconsider its position.  He also has failed to allege that he fully exhausted his administrative remedies as set forth above.  Plaintiffs should show good cause why this claim should not be dismissed.

### 6. Publications

Plaintiffs allege that the USDB implemented a policy in July of 2021 banning all nude photographs, and the updated policy, in combination with MCC 28–1 regarding written materials, effectively bans all forms of sexual expression to or from inmates. (Doc. 9, at 5.)  This Court has previously addressed the *Turner* factors set forth above and  concluded "as a matter of law that USDB Regulation 28–1 is rationally related to legitimate penological interests." *Hays*, 2005 WL 2016903, at *5 (citations omitted).

Although all of the Plaintiffs allege that their First Amendment rights were violated when the USDB rejected their books, some of the claims involve different books.  For example, the

books denied to Plaintiff Ewan are different from the Jan Stryvant books denied to other Plaintiffs. In addition, Plaintiff Ingram was not denied any books.

Although the Court found in the MOSC that only one named plaintiff may proceed, five of the original plaintiffs have signed the Amended Complaint.[6] Plaintiffs must comply with Rule 20(a)(1) regarding permissible joinder of plaintiffs. *Etier v. Soptic*, 2022 WL 1202395, at *3 (D. Kan. 2022). "In the context of prisoner litigation specifically, district courts also have found that the impracticalities inherent in multiple-plaintiff lawsuits militate against permissive joinder otherwise allowed by Rule 20(a)(1)." *Id.* (citations omitted); *see also Bray v. Oklahoma Cty. Jail Auth.*, 2022 WL 1097094, at *1 (W.D. Okla. 2022) (finding joinder infeasible, noting that the PLRA requires each plaintiff to pay the entire filing fee, one inmate may not legally represent another, and "prison movements and regulations could, at any time, restrict interpersonal communication between the Plaintiffs").

One plaintiff cannot assert rights on behalf of other parties. It is well-settled that a claim must be based on the violation of a plaintiff's personal rights and not the rights of someone else. *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citations omitted). To have standing, a prisoner must state "specific facts connecting the allegedly unconstitutional conditions with his own experiences [in the prison], or indicat[e] how the conditions caused him injury." *Swoboda v. Dubach,* 992 F.2d 286, 289 (10th Cir. 1993). In addition, the Tenth Circuit

---

[6] The MOSC provides that:

> The Court finds that only one named plaintiff may proceed. If the other plaintiffs seek to bring an action in this Court, they must each file a separate, properly-signed complaint on court-approved forms demonstrating standing, accompanied by the full filing fee or a motion for leave to proceed in forma pauperis with the required supporting financial information. The Court will then address in each case the individual plaintiff's payment obligations under § 1915(b) and will conduct an initial review of each complaint under §§ 1915(e)(2), 1915A.

(Doc. 8, at 8.)

in *Fymbo v. State Farm Fire and Casualty Co.*, 213 F.3d 1320 (10th Cir. 2000) concluded that a "litigant may bring his own claims to federal court without counsel, but not the claims of others" because "the competence of a layman is 'clearly too limited to allow him to risk the rights of others.'" *Id*. at 1321 (citation omitted).

The Court noted in the MOSC that the Complaint was brought by eight plaintiffs. The Amended Complaint is brought by five of those plaintiffs. The Court found in the MOSC that this Court has previously decided that prisoner plaintiffs may not undermine this statutory fee obligation by joining in the filing of a single action and that each prisoner plaintiff must file a separate action and pay the full district court filing fee. *See Holder v. Kansas*, No. 07-3059-SAC, 2008 WL 199821, at *1 (D. Kan. Jan. 23, 2008) (citing *see e.g.*, *Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001) (each prisoner must proceed in a separate action and be responsible for payment of the full district court filing fee) and *Pinson v. Whetsel*, No. CIV-06-1372-F, 2007 WL 428191 (W.D. Okl. Feb. 1, 2007) (discussing difficulties if joinder of prisoner plaintiffs permitted)); *see also Davidson v. Thompson*, Case No. 18-3084-SAC, 2019 WL 1317465, at *2 (D. Kan. March 22, 2019) ("This Court has previously decided that prisoner plaintiffs may not undermine this statutory obligation by joining in the filing of a single action and that each prisoner plaintiff must file a separate action and pay the full district court filing fee.") (citations omitted).

Plaintiffs argue in the Amended Complaint that the Court can send notices to each of the plaintiffs in this case, "and each is capable of responding to issues that affect their portion of the case." (Doc. 9, at 2.) The Court will reserve ruling on which, if any, plaintiffs may proceed in this action. The Court has noted deficiencies in the Amended Complaint. If Plaintiffs fail to respond to this Memorandum and Order to Show Cause or to submit a proper second amended complaint to cure the deficiencies noted, some or all of the claims may be dismissed without further

order of the Court. If any claims survive screening, the Court then will determine which claims may be joined in this single action.

### III. Response and/or Amended Complaint Required

Plaintiffs are required to show good cause why their Amended Complaint should not be dismissed for the reasons stated herein. Plaintiffs are also given the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[7] Plaintiffs are given time to file a complete and proper second amended complaint in which they (1) raise only properly joined claims and defendants; (2) allege sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) allege sufficient facts to show personal participation by each named defendant.

If Plaintiffs do not file a second amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Amended Complaint and may be dismissed without further notice for the reasons stated herein.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs are granted until **April 22, 2024,** in which to show good cause, in writing, why the Amended Complaint should not be dismissed for the reasons stated herein.

---

[7] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff(s) must write the number of this case (23-3234-JWL) at the top of the first page of the second amended complaint and must name every defendant in the caption. *See* Fed. R. Civ. P. 10(a). They should also refer to each defendant again in the body of the second amended complaint, where they must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. They must allege sufficient additional facts to show a federal constitutional violation.

**IT IS FURTHER ORDERED** that Plaintiffs are also granted until **April 22, 2024**, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

**IT IS SO ORDERED**.

**Dated March 25, 2024, in Kansas City, Kansas.**

                                          **S/   John W. Lungstrum**
                                          **JOHN W. LUNGSTRUM**
                                          **UNITED STATES DISTRICT JUDGE**