IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**STANLEY H.R. EWAN, et al.,**

    **Plaintiffs,**

    v.                                                                                       CASE NO. 23-3234-JWL

**UNITED STATES OF AMERICA,
et al.,[1]**

    **Defendants.**

## MEMORANDUM AND ORDER

Pro se Plaintiffs bring this action under 5 U.S.C. §§ 551 and 702, and 28 U.S.C. §§ 1331 and 2201. Plaintiffs are incarcerated at the United States Disciplinary Barracks at Fort Leavenworth, Kansas ("USDB"). The Court screened Plaintiffs' Complaint and entered a Memorandum and Order to Show Cause (Doc. 8) ("MOSC"), granting Plaintiffs an opportunity to show good cause why their Complaint should not be dismissed or to file an amended complaint to cure the deficiencies. Plaintiffs filed an Amended Complaint (Doc. 9). The Court screened the Amended Complaint and on March 25, 2024, entered a Memorandum and Order to Show Cause (Doc. 10) ("MOSC II") directing Plaintiffs to show good cause why the Amended Complaint should not be dismissed for the reasons set forth in the MOSC II or to file a second amended complaint to cure the deficiencies. Plaintiffs Stanley H.R. Ewan, Jeffrey G. Barnes, Jr., and Norman Stout, have filed a Second Amended Complaint (Doc. 11) ("SAC"). This matter is before the Court for screening the SAC. The Court's screening standards are set forth in the MOSC.

---

[1] Plaintiffs have indicated that Defendant Colonel Payne is no longer directly in charge of the USDB, and the Facility Commander, Lt. Col. Jenni, has replaced Col. Payne. The Court will direct the Clerk to substitute Defendant Jenni for Defendant Payne under Fed. R. Civ. P 25(d).

The underlying facts are set forth in detail in the MOSC II.  In summary, Plaintiffs bring claims regarding the rejection of publications, grooming standards, and abatement days not received by all USDB inmates.  (Doc. 11, at 4.)  Plaintiffs claim violations of Army Regulations and their First and Fifth Amendment rights.  *Id*.  As Count I, Plaintiffs allege a First Amendment violation based on the rejection of their publications.  As Count II, Plaintiffs allege a Fifth Amendment violation based on the destruction of Plaintiff Barnes' books.  As Count III, Plaintiffs allege a Fourteenth Amendment violation based on a new policy that allows abatement days for inmates completing treatment groups while denying the abatement to inmates that had previously completed the program.

The Court found in the MOSC II that although Plaintiffs claimed that they were bringing this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, "the Declaratory Judgment Act does not provide an independent federal cause of action."  *Nero v. Oklahoma*, 2022 WL 14423872, at *2 (10th Cir. 2022) (unpublished) (citation omitted).  "It merely empowers a court '[i]n a case of actual controversy within its jurisdiction' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"  *Id*. (citing § 2201(a)).  "In other words, the Act 'enlarge[s] the range of remedies available in the federal courts,' . . . but it leaves 'substantive rights unchanged,' . . .."  *Id*. (internal citations omitted).

Plaintiffs also asserted jurisdiction under § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Court found in the MOSC II that although this Court has jurisdiction under § 1331 over actions "arising under the Constitution," a "plaintiff must also show the existence of a remedy by stating a claim for relief or a 'cause of action' in federal court."

*Camp v. Richardson*, 2014 WL 958741, at *2 (D. Kan. March 11, 2014). The Court directed Plaintiffs to clarify what federal cause of action they are asserting.

In their SAC, Plaintiffs assert that they are now bringing this action under the Administrative Procedures Act, 5 U.S.C. § 702, and the Declaratory Judgment Act, 28 U.S.C. § 2201. (Doc. 11, at 1.) This Court has held that judicial review of agency action is available under the Administrative Procedures Act, 5 U.S.C. §§ 551 and 702. *Hays v. Commandant, U.S. Disc. Barracks*, 2005 WL 2016903, at *3 (D. Kan. 2005) (noting that the parties agreed that plaintiff exhausted administrative remedies). However, a "court must decline to adjudicate a nonjusticiable claim even if the defendant does not move to dismiss it under Fed. R. Civ. P. 12(b)(6)." *Nauman v. Wormuth*, 2024 WL 776100, at *4 (D. Kan. Feb. 26, 2024) (citation omitted) (addressing justiciability in action seeking declaratory and injunctive relief under 5 U.S.C. § 702).

The Court in *Nauman* found that justiciability depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Id*. at *6 (citing *Baker v. Carr*, 369 U.S. 186, 198 (1962)). The Court stated that:

> "Traditionally the courts have been reluctant to intervene in or review military affairs, particularly those dealing with military discretion." *Lindenau v. Alexander*, 663 F.2d 68, 70 (10th Cir. 1981). The Supreme Court has explained the roots of this reluctance this way: the "complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civil control of the Legislative and Executive Branches." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) (emphasis omitted). There " 'are thousands of routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or jurisdiction of courts to wrestle with.' " *DeRito v. United States*, 851 F. App'x 860, 861 (10th Cir. 2021) (quoting *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993)). So, while "actions against military officials for violating their own regulations are reviewable or justiciable," *Lindenau*, 663 F.2d at 71,

> personnel matters and other "[d]iscretionary decisions of the military are not subject to review by civilian courts," *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir. 1976) (per curiam).
>
> Our Circuit prescribes a two-part test to determine whether a military plaintiff's claim is justiciable. *DeRito*, 851 F. App'x at 861–62. *First*, the court asks "whether the case involves an alleged violation of a constitutional right, applicable statute, or regulation, and whether intra-service remedies have been exhausted." *Lindenau*, 663 F.2d at 71 (quotation cleaned up). *Second*, the court "evaluat[es] the scope and nature of the intervention into otherwise military affairs necessary to vindicate the alleged violation[.]" *DeRito*, 851 F. App'x at 861–62. This second step requires the court "to weigh the nature and strength of the challenges to the military determination, the potential injury to the plaintiff if review is refused, the type and degree of anticipated interference with the military function, and the extent to which military discretion or expertise is involved in the challenged decision." *Lindenau*, 663 F.2d at 71 (quotation cleaned up). This second part of the test "essentially balances the interest of the parties, with a preference against interference in the military." *Costner v. Okla. Army Nat'l Guard*, 833 F.2d 905, 907 (10th Cir. 1987).

*Nauman*, 2024 WL 776100, at *6.

The Court in *Nauman* noted that "[t]he parties agree that plaintiff has met step one of the *Lindenau* test by alleging a constitutional violation and exhausting his intra-service remedies." *Id*. at *7 (citing *Lindenau*, 663 F.2d at 71). In *Nauman*, the plaintiff had submitted two Article 138 complaints. *Id*. at *3–4.

In the MOSC II, the Court addressed exhaustion as it pertains to the instant case. The Court found that the Prison Litigation Reform Act ("PLRA") applies in this case and provides that a prisoner may not bring an action with respect to prison conditions under federal law "until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a); *see also Long v. Johnston*, 2022 WL 17177348, at *2 (D. Kan. Nov. 23, 2022) (citing *see* 42 U.S.C. § 1997e(a); *see also Murphy v. Hylton*, 2007 WL 1201517, at *3 (D. Kan. Apr. 23, 2007) (military prisoner

4

must exhaust under Section 1997e(a) regarding conditions at the USDB); *Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1262-65 (D. Kan. 1999) (applying PLRA's exhaustion requirement in suit by military prisoner)).

The Court found in the MOSC II that a plaintiff is required to seek relief for grievances by filing a written complaint under Article 138[2] before filing an action for violations of constitutional rights with respect to prison conditions. *Long*, 2022 WL 17177348, at *2; *see also Guinn*, 81 M.J. at 203 (exhaustion required the use of *both* the applicable prison grievance system and an Article 138 complaint). The Court directed Plaintiffs to show good cause why their claims should not be dismissed for failure to exhaust administrative remedies.

In their SAC, Plaintiffs allege that an Article 138 Complaint is for complaints against a service member's commander and the USDB is not Plaintiffs' Commander for purposes of Article 138. (Doc. 11, at 11–12.) Plaintiffs allege that none of their Commanders are in the chain of command of the USDB and have no authority to direct changes at the USDB or approve any kind of requests submitted regarding the running of the facility. *Id*. at 12. Thus, they argue that an Article 138 Complaint is not a valid vehicle for exhausting administrative remedies at the USDB. *Id*.

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate USDB officials. *See Martinez v. Aaron*, 570 F.2d 317

---

[2]   Article 138 provides that:
> Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

10 U.S.C. § 938.

(10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate USDB officials to prepare and file a *Martinez* Report. The Report should also include any information pertaining to exhaustion and justiciability. Once the report has been received, the Court can properly screen Plaintiffs' claims under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

(1) The USDB officials shall submit the *Martinez* Report by **June 28, 2024**. Upon the filing of that Report, the Court will screen Plaintiffs' SAC. If the SAC survives screening, the Court will enter a separate order directing service.

(2) Officials responsible for the operation of the USDB are directed to undertake a review of the subject matter of the SAC:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the SAC; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this SAC and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiffs. If the USDB officials wish to file any exhibits or portions of the report under seal or without service on Plaintiffs, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The USDB officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric

examinations shall be included in the written report. Any recordings related to Plaintiffs' claims shall also be included.

(5) Authorization is granted to the USDB officials to interview all witnesses having knowledge of the facts, including Plaintiffs.

(6) No motion addressed to the SAC shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiffs shall not commence until Plaintiffs have received and reviewed any Court-ordered answer or response to the SAC. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter Lt. Col. Jenni as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, Lt. Col. Jenni may move for termination from this action as interested party.

Copies of this order shall be transmitted to Plaintiffs, to Defendants, and to the U.S. Attorney for the District of Kansas.

**IT IS SO ORDERED**.

**Dated April 30, 2024, in Kansas City, Kansas.**

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE